UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| PLUMBERS AND STEAMFITTERS LOCAL ) <br> NO. 7 PENSION FUND, Individually and On ) <br> Behalf of All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WALGREEN CO., JEFFREY A. REIN and ) <br> GREGORY D. WASSON, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> _____ ) | No.   **FILED: APRIL 16, 2008** <br> **08CV2162     PH** <br> **JUDGE ASPEN** <br> **MAGISTRATE JUDGE BROWN** <br><br> **JURY DEMAND** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF**
**FEDERAL SECURITIES LAWS**

Plaintiff alleges the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Walgreen Co. ("Walgreen" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of purchasers of the common stock of Walgreen between June 25, 2007 and November 29, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     By the start of the Class Period, Walgreen was experiencing a steady decline in the growth of its core business -- filling retail drug prescriptions.  Throughout the Class Period, defendants failed to disclose declining growth rates for the Company's generic prescription business and misled investors concerning the sustainability of Walgreen's profits and sales.

3.     On October 1, 2007, Walgreen shocked the market by announcing the Company's first quarterly earnings decline in more than ten years.  In reaction to this news, the price of Walgreen common stock declined from $47.00 per share to $39.96 per share, on extremely heavy trading.

4.     Unbeknownst to Walgreen's public shareholders, underlying the erosion of Walgreen's earnings was a material contract dispute with one of the nation's largest third party providers of prescription drug benefits – CVS Caremark ("Caremark").  More than 90% of Walgreen's prescription sales are made through third party providers.  During 2007, Walgreen disputed Caremark's reimbursement rates for a number of prescription drug plans located primarily in the upper Midwestern U.S., which were negatively impacting the Company's earnings.  On November 5, 2007, Caremark filed suit against Walgreen stating that the Company had violated its contractual notice of termination obligations.  A U.S. District Court agreed and imposed a temporary restraining order barring Walgreen's termination of the Caremark agreement.

5.     Then, on November 29, 2006, Walgreen announced that "[a]fter many months" of dispute with Caremark over the reimbursement rates for four prescription plans, Walgreen withdrew as a pharmacy provider from the plans.  According to the Company's press release, patients affected

include members of prescription benefit plans managed by Caremark for ArcelorMittal, Johnson Controls, Inc., Progressive Casualty Insurance Co. and Wisconsin Education Association Trust. Most of the affected plan members live in Illinois, Indiana, Michigan, Ohio and Wisconsin.

6.      Following this announcement, shares of Walgreen common stock declined to a new three year low of $36.59 per share at the close of trading on November 30, 2007.

7.      Prior to the disclosure of the true facts about the Company's business, Walgreen insiders, including the Individual Defendants (defined below), sold more than 155,000 shares of their personally held Walgreen common stock to the unsuspecting investing public at artificially inflated prices, garnering proceeds of more than $6.6 million.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

10.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as Walgreen is headquartered in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

11.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

A.     **Plaintiff**

12.     Plumbers and Steamfitters Local No. 7 Pension Fund, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Walgreen during the Class Period and has been damaged thereby.

B.     **Defendants**

13.     Walgreen operates a chain of drugstores in the United States. The Company maintains its executive office in this District.

14.     (a)     Jeffrey A. Rein ("Rein") served as Walgreen's Chief Executive Officer ("CEO") during the Class Period.

(a)     Gregory D. Wasson ("Wasson") served as Walgreen's President during the Class Period.

(b)     Rein and Wasson are collectively referred to herein as the "Individual Defendants."

15.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

16.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the

narrowly defined group of defendants identified above.  Each of the above officers of Walgreen, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

17.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of

their Board membership and/or executive and managerial positions with Walgreen, each of the Individual Defendants had access to the adverse undisclosed information about Walgreen's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Walgreen and its business issued or adopted by the Company materially false and misleading.

19.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

20.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Walgreen common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme:   (i) deceived the investing public regarding Walgreen's business, operations, management and the intrinsic value of Walgreen common stock; (ii) enabled Walgreen insiders to collectively sell more than 155,000 shares of their personally-held Walgreen stock to the unsuspecting public generating proceeds of more than $6.6 million; and (iii) caused plaintiff and other members of the Class to purchase Walgreen common stock at artificially inflated prices.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

21.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities

of Walgreen during the Class Period, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Walgreen common shares were actively traded on the NYSE.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Walgreen or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

24.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)      whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Walgreen; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

26.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

27.      Walgreen operates a chain of drugstores in the United States. These drugstores sell prescription and non-prescription drugs, and general merchandise.  During the last three fiscal years, the Company reported that it derived 64-65% of it sales from sales of branded and generic drugs through its pharmacies.  More than 90% of Walgreen's pharmacy sales are "third party" sales, where reimbursement is received from managed care organizations, the government or private insurers.

28.      The Class Period commences on June 25, 2007.  On that date, the Company reported its financial results for its third fiscal quarter of 2007, the three months ended May 31, 2007.  For the quarter the Company reported net earnings of $561 million or $0.56 per share. Rein commented on the results, stating, in pertinent part, as follows:

> The growth opportunity we have ahead of us is exciting.  With the first of 78 million baby boomers turning 65 in 2011, the demand for pharmacy services will get bigger and bigger. We intend to be the best-positioned pharmacy chain in the country to serve that need, and we're on track to exceed our goal of 7,000 stores in 2010.

Wasson also commented on the results, stating, in pertinent part, as follows:

> We're now in our fourth consecutive year of front-end comparable store sales increases in excess of 5 percent. Our store locations prove their worth every day by attracting customers looking for a convenient place to shop.

29.    On July 3, 2007, Walgreen reported sales of the first month of the Company's fiscal fourth quarter June 2007 of $4,377,800,000, an increase of 9.5% from $3,999,255,000 for the same month in 2006. Sales in comparable stores (those open at least a year) rose 5.1%. The Company's press release stated, in pertinent part:

> June pharmacy sales increased 8.3 percent, while comparable pharmacy sales increased 4.2 percent. Comparable pharmacy sales were negatively impacted by 5.9 percent due to generic introductions in the last 12 months. Total prescriptions filled at comparable stores increased 2.2 percent. Pharmacy sales accounted for 65.5 percent of total sales for the month.

30.    On August 2, 2007, Walgreen reported July 2007 sales of $4,417,400,000, an increase of 11.0% from $3,979,512,000 for the same month in 2006. Sales in comparable stores (those open at least a year) rose 7.2%. The Company's press release stated, in pertinent part:

> July pharmacy sales increased 11.7 percent, while comparable pharmacy sales increased 8.2 percent. Comparable pharmacy sales were negatively impacted by 4.5 percent due to generic drug introductions in the last 12 months. Total prescriptions filled at comparable stores increased 5.6 percent. Pharmacy sales accounted for 66.1 percent of total sales for the month.

31.    On September 5, 2007, Walgreen reported August 2007 sales of $4,621,200,000, an increase of 10.3% from $4,191,489,000 for the same month in 2006. Sales in comparable stores (those open at least a year) rose 6.5%. The Company's press release stated, in pertinent part:

> August pharmacy sales increased 9.9 percent, while comparable pharmacy sales increased 6.5 percent. Comparable pharmacy sales were negatively impacted by 4.2 percentage points due to generic drug introductions in the last 12 months. Total prescriptions filled at comparable stores increased 3.4 percent. Pharmacy sales accounted for 66.4 percent of total sales for the month.

32.    The statements referenced above in ¶¶28-31 were each materially false and misleading when made because they failed to disclose and misrepresented the following material adverse facts, which were known to defendants or recklessly disregarded by them:

(a)    that growth in the Company's sales and prescriptions for generic drugs were significantly below prior years' results and were preventing the Company from meeting earnings expectations for the fourth quarter of fiscal 2007;

(b)    that the Company was in a material contract dispute with Caremark concerning reimbursement rates for the Company's participation in certain prescription drug plans which was further eroding the Company's earnings; and

(c)    based on the foregoing, defendants lacked a reasonable basis for their positive statements about the Company, its earnings and prospects.

33.    On October 1, 2007, prior to the market opening, Walgreen issued a press release announcing its financial results for its fourth fiscal quarter and fiscal year 2006. For the fourth quarter, the Company reported net income of $0.40 per share – far below analysts' earnings expectations of $0.47 per share. Rein commented on the announcement, stating, in pertinent part, as follows:

> This quarter was negatively impacted by lower generic drug reimbursements, combined with higher salary and store expenses, and higher advertising costs. Our expenses weren't in line with the level of reimbursements we were receiving. Managing both expenses and lower reimbursements on some generic drugs is my top priority. We're going to fix this, and at the same time continue our aggressive growth plan.

34.    In response to the announcement, the price of Walgreen stock declined from $47.00 per share to $39.96 per share, on extremely heavy trading volume.

35.    On November 15, 2007, the *Atlanta Journal-Constitution* reported that Walgreen was considering slowing its plan for new store openings, the primary engine for the Company's historical growth. The article stated, in pertinent part:

> Walgreen Co., the largest U.S. drugstore chain, may slow its plans for new store openings. "We are debating it," Chief Executive Jeffrey Rein said Wednesday. There is "no final answer yet," he said, speaking to analysts. Walgreen expects to open 550 stores this year with a goal of reaching 7,000 locations in 2010. The Deerfield, Ill.-

based company now operates more than 6,000 sites. Last month, the retailer reported its first profit decline in almost a decade, citing higher salaries and advertising costs. Walgreen shares have dropped 15 percent since the announcement on Oct. 1.

36.    Then, on November 29, 2007, Walgreen announced that it was terminating its pharmacy participation in several prescription drug plans managed by Caremark "after many months" of dispute.  The Company's press release stated, in pertinent part:

> After many months of talks over unreasonably low and below-market payment rates by CVS Caremark Corp. for four prescription plans, Walgreens (NYSE:WAG) (NASDAQ:WAG) today withdrew as a pharmacy provider from the plans.
>
> Patients affected include members of prescription benefit plans managed by CVS Caremark for ArcelorMittal, Johnson Controls, Inc., Progressive Casualty Insurance Co. and Wisconsin Education Association Trust. Most of the affected members live in Illinois, Indiana, Michigan, Ohio and Wisconsin.
>
> *      *      *
>
> Leaving a benefits plan is an extraordinary step for us, but it demonstrates how extraordinarily low our payments were from CVS Caremark. We can't continue accepting reimbursement rates that are drastically below market …

37.    Following this news, Walgreen common shares declined to a new three year low of $36.59 per share at the close of trading on November 30, 2007.

38.    The market for Walgreen common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Walgreen common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Walgreen common stock relying upon the integrity of the market price of Walgreen common stock and market information relating to Walgreen, and have been damaged thereby.

39.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Walgreen common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein,

not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

40.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Walgreen's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Walgreen and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**Additional Scienter Allegations**

41.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Walgreen, their control over, and/or receipt and/or modification of Walgreen's allegedly materially misleading misstatements and/or their associations

with the Company which made them privy to confidential proprietary information concerning

Walgreen, participated in the fraudulent scheme alleged herein.

42. Defendants' scienter is further evidenced by their insider selling, as follows:

| Last Name | First Name | Date | Shares | Price | Proceeds | | |
|---|---|---|---|---|---|---|---|
| BERNAUER | DAVID | 8/20/2007 | 37,290 | $45.19 | $1,685,135 | | |
| | | | 37,290 | | $1,685,135 | 37,290 | $1,685,135 |
| | | | | | | | |
| BRYANT | RAYMOND | 8/17/2007 | 8,400 | $45.63 | $383,292 | | |
| BRYANT | RAYMOND | 8/17/2007 | 7,000 | $45.73 | $320,110 | | |
| BRYANT | RAYMOND | 8/17/2007 | 1,000 | $45.76 | $45,760 | | |
| BRYANT | RAYMOND | 8/17/2007 | 340 | $45.84 | $15,586 | | |
| | | | 16,740 | | $764,748 | 16,740 | $764,748 |
| | | | | | | | |
| GLEESON | JOHN | 7/17/2007 | 6,976 | $44.56 | $310,851 | | |
| GLEESON | JOHN | 7/17/2007 | 6,400 | $44.54 | $285,056 | | |
| GLEESON | JOHN | 7/17/2007 | 2,100 | $44.55 | $93,555 | | |
| GLEESON | JOHN | 7/17/2007 | 300 | $44.53 | $13,359 | | |
| | | | 15,776 | | $702,821 | 15,776 | $702,821 |
| | | | | | | | |
| HANDAL | WILLIAM | 8/7/2007 | 4,402 | $45.33 | $199,543 | | |
| HANDAL | WILLIAM | 8/7/2007 | 3,027 | $45.33 | $137,214 | | |
| HANDAL | WILLIAM | 8/7/2007 | 500 | $45.32 | $22,660 | | |
| HANDAL | WILLIAM | 11/20/2007 | 1,004 | $39.49 | $39,648 | | |
| | | | 8,933 | | $399,065 | 8,933 | $399,065 |
| | | | | | | | |
| HUONKER | DONALD | 9/26/2007 | 3,074 | $48.00 | $147,552 | | |
| | | | 3,074 | | $147,552 | 3,074 | $147,552 |
| | | | | | | | |
| LEWIS | J | 10/19/2007 | 3,507 | $38.00 | $133,266 | | |
| | | | 3,507 | | $133,266 | 3,507 | $133,266 |
| | | | | | | | |
| REIN | JEFFREY | 7/20/2007 | 6,000 | $45.14 | $270,840 | | |
| REIN | JEFFREY | 8/8/2007 | 4,000 | $46.00 | $184,000 | | |
| REIN | JEFFREY | 8/9/2007 | 1,366 | $47.50 | $64,885 | | |
| REIN | JEFFREY | 8/9/2007 | 908 | $47.50 | $43,130 | | |
| | | | 12,274 | | $562,855 | 12,274 | $562,855 |
| | | | | | | | |
| RIEDL | GEORGE | 8/20/2007 | 20,000 | $45.00 | $900,000 | | |
| | | | 20,000 | | $900,000 | 20,000 | $900,000 |
| | | | | | | | |
| TAYLOR | TRENT | 8/7/2007 | 9,315 | $45.38 | $422,715 | | |
| TAYLOR | TRENT | 8/7/2007 | 6,136 | $45.50 | $279,188 | | |
| | | | 15,451 | | $701,903 | 15,451 | $701,903 |
| | | | | | | | |
| VON FERSTEL | MARILOU | 11/7/2007 | 3,075 | $38.47 | $118,295 | | |
| | | | 3,075 | | $118,295 | 3,075 | $118,295 |

| WASSON | GREGORY | 8/14/2007 | 19,342 | $45.21 | $874,452 | | |
| | | | 19,342 | | $874,452 | 19,342 | $874,452 |
| | | | | | | 155,462 | $6,990,091 |
| | | **Totals:** | **155,462** | | **$6,990,091** | | |

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

43. At all relevant times, the market for Walgreen common stock was an efficient market for the following reasons, among others:

(a) Walgreen stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Walgreen filed periodic public reports with the SEC and the NYSE;

(c) Walgreen regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Walgreen was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44. As a result of the foregoing, the market for Walgreen common stock promptly digested current information regarding Walgreen from all publicly available sources and reflected such information in Walgreen's stock price. Under these circumstances, all purchasers of Walgreen common stock during the Class Period suffered similar injury through their purchase of Walgreen common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

45.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Walgreen who knew that those statements were false when made.

**COUNT I**

**Violation of Section 10(b) of
the Exchange Act and Rule 10b-5
Promulgated Thereunder Against All Defendants**

46.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47.      During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.      Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not

misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

49.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Walgreen common stock. Plaintiff and the Class would not have purchased Walgreen common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

50.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Walgreen common stock during the Class Period.

**COUNT II**

**Violation of Section 20(a) of
the Exchange Act Against the Individual Defendants**

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Walgreen within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Walgreen, and their ownership of Walgreen stock, the Individual Defendants had the power and authority to cause Walgreen to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  April 16, 2008                         PLUMBERS AND STEAMFITTERS LOCAL
                                               NO. 7 PENSION FUND


                                               By:   /s/ Marvin A. Miller
                                               _____
                                               MARVIN A. MILLER
                                               LORI A. FANNING
                                               MILLER LAW LLC
                                               115 S. LaSalle Street, Suite 2910
                                               Chicago, IL  60603
                                               Telephone:  312/332-3400
                                               312/676-2676 (fax)

                                               SAMUEL H. RUDMAN
                                               RUSSELL J. GUNYAN
                                               COUGHLIN STOIA GELLER RUDMAN &
                                                 ROBBINS LLP
                                               58 South Service Road, Suite 200
                                               Melville, NY  11747
                                               Telephone:  631/367-7100
                                               631/367-1173 (fax)

                                               Attorneys for Plaintiff

- 17 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

PLUMBERS AND STEAMFITTERS LOCAL NO. 7 PENSION FUND ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

Security          Transaction          Date          Price Per Share

*See* attached Schedule A.

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*Casey v. National City Corporation, et al.*, No. 1:08-cv-0209 (N.D. Ohio)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

WALGREEN

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _8th_ day of _APRIL_, 2008.

PLUMBERS AND STEAMFITTERS
LOCAL NO. 7 PENSION FUND

By: _Robert W Valenty_

Its: _Administrator_

- 2 -

WALGREEN

## SCHEDULE A

## SECURITIES TRANSACTIONS

### Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 09/06/2007 | 5,800 | $44.98 |

### Sales

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 10/01/2007 | 1,535 | $40.35 |
| 10/01/2007 | 1,816 | $40.47 |
| 10/01/2007 | 1,984 | $40.39 |
| 10/02/2007 | 23 | $39.05 |
| 10/02/2007 | 28 | $40.21 |
| 10/02/2007 | 55 | $38.93 |
| 10/02/2007 | 162 | $39.51 |
| 10/02/2007 | 197 | $39.32 |