**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TEAMSTERS AFFILIATES PENSION PLAN & INTERNATIONAL BROTHERHOOD OF TEAMSTERS GENERAL FUND AND RETIREMENT AND PROTECTION PLAN,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WALGREENS CO., JEFFREY A. REIN, & GREGORY D. WASSON,<br><br>　　　　　Defendants. | Case No. 08 C 2162<br><br>Judge Joan B. Gottschall |

## ORDER

Plaintiffs, Teamsters Affiliates Pension Plan and International Brotherhood of Teamsters General Fund and Retirement and Protection Plan, have brought suit against Defendants Walgreens Co., Jeffrey A. Rein, and Gregory D. Wasson. The lawsuit is brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5.

Plaintiffs are investors in Walgreens stock. The genesis of Plaintiffs' complaint involves a stock drop occurring in on or around September 28, 2007. Walgreens announced on September 28 its fourth quarter earnings per share ("EPS") for 2007, and the number was lower than analysts had expected. The Walgreens stock dropped 15% after the news was announced, from $47.24 to $40.16 per share. Plaintiffs allege, and at this stage Defendants do not dispute, that the lowered EPS was a result of two predictable facts. First, Walgreens was receiving substantial profits from one of its generic drugs, simvastatin, and because of the nature of the generic drug market it was predictable

that the profits from simvastatin would decline in the fourth quarter of 2007.[1]  Second, Plaintiffs allege that Walgreens had increasing sales, occupancy and administration expenses ("SO&A") during the fourth quarter, which were predictable because of the manner in which Walgreens monitored its revenue and expenses on a weekly basis.

"In general, to prevail on a Rule 10b-5 claim, a plaintiff must prove that the defendant: 1) made a misstatement or omission, 2) of material fact, 3) with scienter, 4) in connection with the purchase or sale of securities, 5) upon which the plaintiff relied, and 6) that reliance proximately caused the plaintiff's injury."  *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995).  However, "silence about even material information is not fraudulent absent a duty to speak." *Id.*

Plaintiffs have made a strong showing that Defendants were aware of the issues related to simvastatin and the SO&A expenses prior to the fourth quarter of 2007.  The drop in profits for simvastatin was predictable because what happened to it is allegedly what happens to every generic drug, and the increased SO&A expenses were predictable because the Defendants saw this playing out on a weekly basis.  There is also no dispute these issues were not disclosed to the public by Walgreens, and there is reason to believe, at least at this stage, that these were the dominant factors giving rise to the stock drop at the end of September, 2007.  Thus, even under the heightened scienter requirements imposed by the Private Securities Litigation Reform Act, Plaintiffs have likely shown that Defendants were aware that the stock price would drop when these disclosures were later made.  *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007) (discussing scienter and the holding of *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

---

[1] Plaintiffs argue that sale of new generic drugs is typically the most profitable in the first six months the generic reaches the market.  After six months, the profitability diminishes due to market competition.

The problem for Plaintiffs, though, is that they have not included any allegations that Defendants had a *duty* to disclose this information. *Stransky*, 51 F.3d at 1331  Plaintiffs concede that Walgreens follows a "no guidance" policy—Walgreens does not make public predictions of future earnings.  Instead, Walgreens provides quarterly reports on how it performed for that previous quarter and historically.  Plaintiffs do not contend that any of the statements made regarding historical performance were incorrect.  Plaintiffs rather argue that the statements were incomplete; they argue that by reporting that profits were doing well at the end of the third quarter of 2007, Walgreens implicitly warranted that this profitability would continue throughout the fourth quarter of 2007.  This theory is unsupportable.  "In general, courts reject the argument that accurate reporting of impressive results can mislead by implication to future periods." *Searls v. Glasser*, No. 91 C 6796, 1994 WL 523712, at *7 (N.D. Ill. 1994).  And as the Sixth Circuit has explained, "It is clear that a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data. . . . The disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *In re Sofamor Danek Group, Inc.* 123 F.3d 394, 401 n.3 (6th Cir. 1997) (citations omitted); *see also In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1432–33 (3d Cir. 1997).  Plaintiffs also argue that these future trends should have been reported in other documents, including on Walgreens' Form 10-Q SEC filings.  *See*  17 C.F.R. § 229.303(a)(3)(ii). However, "the caselaw is clear that Item 303(a) does not give rise to private action under Rule 10b.," and "[a]bsent some other basis for the duty, plaintiffs cannot rely solely on Item 303(a)." *Anderson v. Abbott Labs.,* 140 F. Supp. 2d 894, 909 (N.D. Ill. 2001).

Because Plaintiffs have failed to allege a basis by which Defendants could have any legal duty to disclose the drop in revenue from simvastatin and the increase in SO&A expenses prior to

3

the time that it did, *see Higginbotham*, 495 F.3d at 760 (noting that reporting must typically be done quarterly, not when adverse news becomes apparent), its claim under Section 10(b) (Count I) is dismissed.

Plaintiffs also raise a claim under Section 20(a) of the Securities and Exchange Act, 15 U.S.C. § 78t(a),[2] against Rein and Wasson (Count II). However, to find Rein and Wasson liable under Section 20(a), the court would have to first find a violation under Section 10(b). *Id.* In other words, Count II is derivative of Count I. Because Count I is dismissed, Count II is dismissed.

                        ENTER:

                        /s/
                        JOAN B. GOTTSCHALL
                        United States District Judge

DATED: September 24, 2009

---

[2] "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).