**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PLUMBERS AND STEAMFITTERS LOCAL NO. 7 PENSION FUND,<br><br>    Plaintiff,<br><br>    v.<br><br>WALGREEN CO., JEFFREY A. REIN and GREGORY D. WASSON,<br><br>    Defendants. | Case No. 08 CV 2162<br><br>Judge Joan B. Gottschall<br><br>Magistrate Judge Morton Denlow |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION
OF THE COURT'S SEPTEMBER 24, 2009 ORDER**

Plaintiff's Motion for Reconsideration ("Motion") seeks the unwarranted and extraordinary remedy of vacating a final judgment. Plaintiff asks the Court to vacate its Order, which granted Walgreens' Motion to Dismiss and entered final judgment against Plaintiff.[1] Plaintiff further requests that the Court permit it to file a *fourth* complaint, nearly 18 months after this litigation began, to allege "additional" facts appearing on the face of a June 26, 2007 analyst report. Plaintiff does not and cannot justify the extraordinary remedy it seeks.

To begin with, the Motion does not meet the requirements of Rule 59(e). The proposed fourth amended complaint ("PFAC") contains no new facts that Plaintiff could not have discovered before filing the Corrected Amended Complaint ("CAC"), which the Court dismissed. The June 2007 analyst report that Plaintiff now cites has been in the public domain for over two years. Moreover, the June 2007 analyst report provides no information not already

---

[1] Throughout this Response, Defendants Walgreen Co., Jeffrey A. Rein, and Gregory D. Wasson (collectively, "Walgreens") refer to the Court's September 24, 2009 Order [Dkt. No. 55] and the Judgment in a Civil Case [Dkt. No. 56] collectively as the "Order."

included in the CAC.  Thus, the PFAC contains the same defects that warranted dismissal of the CAC.  Accordingly, even if the Court considers vacating the Order, the proposed amendment is untimely, futile, and would unduly prejudice Walgreens.  For each of these reasons, the Court should deny the Motion.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

As the Court noted in the Order, this case arises from the stock drop that occurred after Walgreens announced lower-than-anticipated earnings for 4Q07.  (Order at 1.)  Walgreens announced its 4Q07 earnings on October 1, 2007.  (CAC ¶ 50.)  Over six months later, Plaintiff Plumbers and Steamfitters Local No. 7 Pension Fund filed this action on behalf of a putative class of Walgreens shareholders.  Plaintiff based its allegations on the investigation of counsel, including counsel's review of "analysts' reports and advisories about the Company," among other materials.  (*See* Class Action Complaint For Violations Of Federal Securities Laws at 1 [Dkt. No. 1]; 8/19/2008 Minute Order (approving selection of lead counsel Coughlin Stoia Geller Rudman & Robbins LLP and lead plaintiff Teamsters Affiliates Pension Plan and International Brotherhood of Teamsters General Fund and Retirement and Protective Plan) [Dkt. No. 25].)

After the Court appointed lead plaintiff and lead counsel, the lead plaintiff took nearly *two more months* (and two extensions of time) to file its Amended Complaint for Violations of Federal Securities Laws.  [*See* Dkt. Nos. 27-29, 31-32, 34.]  Then, over three weeks later and *fifteen months* after the events giving rise to the case occurred, Plaintiff filed the CAC, which became the operative complaint.  [Dkt. No. 35.]  In it, Plaintiff continued to rely on analyst reports.  (*See* CAC ¶¶ 22, 47, 54, 55-56, 59, 61.)

On December 15, 2008, Walgreens moved to dismiss the CAC because of its numerous patent deficiencies.  [Dkt. Nos. 40-41.]  Plaintiff responded on January 26, 2009, but did not seek

leave to cure its pleading deficiencies or even request leave to amend in the event the Court granted Walgreens' motion. [Dkt. No. 48.] By its Order, the Court dismissed the CAC and entered judgment against Plaintiff. [Dkt. Nos. 54-56.]

In the Order, the Court noted that Plaintiff alleged the 4Q07 stock drop resulted from two allegedly "predictable facts." (Order at 1.) "First, Walgreens was receiving substantial profits from one of its generic drugs, simvastatin, and because of the nature of the generic drug market it was predictable that the profits from simvastatin would decline in the fourth quarter of 2007." (*Id.* at 1-2 (footnote omitted).) "Second, Plaintiffs allege that Walgreens had increasing sales, occupancy and administration expenses ('SO&A') during the fourth quarter, which were predictable because of the manner in which Walgreens monitored its revenue and expenses on a weekly basis." (*Id.* at 2.) Rejecting Plaintiff's claim, the Court held that Plaintiff failed to plead that Walgreens "had a *duty* to disclose this information." (*Id.* at 3 (emphasis in original).) The Court reasoned that Plaintiff's theory—that Walgreens' statements regarding past performance were made misleading by the alleged omissions—was "unsupportable" because "courts reject the argument that accurate reporting of impressive results can mislead by implication to future periods." (*Id.* at 3 (internal quotation omitted).)

On October 13, 2009, Plaintiff filed its Motion under Rule 59(e). [Dkt. No. 57.] Plaintiff also submitted a proposed Second Amended Complaint (which actually would be the fourth complaint if allowed). According to Plaintiff, the PFAC: (1) states "additional facts" giving rise to a duty to disclose, based on a previously un-cited analyst report; (2) removes allegations related to Securities and Exchange Commission Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), which the Court held did not give rise to a private cause of action; and (3) narrows the class period. (Pl. Mem. in Supp. of Mot. for Recon. ("Mem.") at 4-5.)

The "additional facts" come from a June 2007 Lehman Brothers analyst report ("2007 Lehman Report"), which states:

> <u>This marks the third quarter in a row that WAG has experienced significant year-over-year gross margin improvement, which is being driven primarily by new generic drug launches that are leading to increased utilization of generics.</u> Generic drug <u>penetration of total scripts rose to 65.8% this quarter compared to 62.6% in the second quarter, aided in part by the recent launch of Norvasc.</u> The company continues to reiterate that generics are very positive for its business and that there are no meaningful changes in reimbursement from third-party payors—either in the timing of reimbursement changes or the level of those changes. <u>Other retailers have commented specifically on pressures related to generic reimbursement, particularly in the timing that generics move to the fixed price list called MAC (maximum allowable cost) from a reimbursement methodology tied to average wholesale price.  WAG continues to say that MAC begins when a generic starts to be supplied by multiple suppliers (known as multi-sourcing).  In the past we believe that there was some lag between multi-sourcing and MAC, and this period provided incremental gross profit dollars to pharmacies.</u>  Some of the questions about generic reimbursement are coming because generic Zocor (simvastatin), the largest generic launched during the past few years, went to MAC pricing very quickly.  <u>WAG says that it negotiates with payers for what it considers an acceptable gross profit dollar per script, looked at as an average of all the scripts it fills for a particular plan.  The company says it remains happy with the outcome of those negotiations.</u>

(*See* <u>Exhibit A</u> (emphasis to indicate material omitted by Plaintiff in, for example, paragraph 38 of the PFAC).)[2]

## ARGUMENT

"A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *EEOC v. Int'l Profit Assocs., Inc.*, Case No. 01 C 4427, 2008 WL 485130, *1 (N.D.

---

[2] The Court may take judicial notice of a document the Plaintiff quotes from and relies upon in the complaint. *Silverman v. Motorola, Inc.*, Case No. 07 C 4507, 2008 WL 4360648, 1 (N.D. Ill. Sept. 23, 2008) ("the court must consider any written instrument either attached to the complaint or referred to therein. . . .").

4

Ill. Feb. 22, 2008) (Gottshcall, J.) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). "'A "manifest error" is not demonstrated by the disappointment of the losing party.'" *Id.* (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). "Because the conditions that justify granting a motion to reconsider are rarely present, ***such motions are disfavored*** and should be equally rare." *Id.* (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.3d 1185, 1191 (7th Cir. 1990) (emphasis added) (internal quotations ommitted). The decision to deny the motion is discretionary, and the Seventh Circuit "will not ordinarily question a district judge's decision to enforce rules designed to promote the efficient and orderly process of litigation." *Sparrow v. Heller*, 116 F.3d 204, 206 (7th Cir. 1997).

Plaintiff erroneously asserts that a less exacting standard should apply to the Motion because it couples its motion to vacate with a request to file an amended complaint. (Mem. at 2.) Plaintiff overlooks binding Seventh Circuit authority, however, which holds that "the presumption that leave to amend shall be freely given pursuant to Rule 15(a) ***disappears after judgment has been entered***." *Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994) (emphasis added); *see also Bressner v. Ambroziak*, 379 F.3d 478, 484 (7th Cir. 2004) ("This court has recognized . . . that this [Rule 15(a)] presumption *is reversed* in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed.") (emphasis added). Because the Court entered a final judgment, Plaintiff's proposed "liberal[] standard" is inappropriate.[3] But, in any event, the Motion should be denied because Plaintiff cannot meet either standard.

---

[3] Plaintiff's reliance on a twelve-year-old, unpublished district court case, *Chavez v. Farmington Foods, Inc.*, is misplaced in light of controlling Seventh Circuit precedent on the issue. Case No. 97 C 1910, 1997 U.S. Dist. LEXIS 15688, *2 (N.D. Ill. Sept. 30, 1997). *Chavez* erroneously states—without citing *Harris*, which had been decided months before—that the Seventh Circuit had yet to opine on the "standard to be employed by a trial court in considering a post-dismissal motion to amend a complaint." *Id.* at *7. Although it noted that "some courts" outside of the Seventh Circuit had applied "the more

5

### A.    The PFAC Does Not Meet The Rule 59(e) Standard.

To obtain relief under Rule 59(e), Plaintiff would have to allege new facts it could not have discovered before filing the CAC that establish Walgreens (i) made a false statement or (ii) had a duty to disclose additional information.[4]  But Plaintiff offers no "new" facts.  Instead, Plaintiff pleads so-called "additional" facts, which have been available since June 2007.  (Mem. at 6.)  Even the case Plaintiff cites holds that "the mere desire to expand the allegations of a dismissed complaint does not, by itself, normally merit lifting [a] judgment."  *Camp v. Gregory*, 67 F.3d 1286, 1290 (7th Cir. 1995).[5]  Thus, because Plaintiff could have cited the Lehman Report—which adds no new facts anyway—in its CAC, the Motion should be denied.

To begin with, the 2007 Lehman Report does not contain any "new" factual information that was either false or misleading.  The 2007 Lehman Report analyzes ***historical*** results from Walgreens' 3Q07.  The allegedly false statement appears in a paragraph beginning with: "This [3Q07] marks the third quarter in a row that WAG has experienced significant year-over-year gross margin improvement, which is being driven primarily by new generic drug launches . . . ." (Ex. A.)  Thus, it is plain both from the context of the document as a whole and the paragraph quoted in particular that the analyst is paraphrasing statements Walgreens made about its 3Q07 historical performance.  *See Silverman v. Motorola, Inc.*, Case No. 07 C 4507, 2008 WL

---

liberal standards of Rule 15(a)," it did not ultimately adopt that standard.  Rather, the court granted the motion only after finding that it had made a factual error.  *Id.* at *10-11.

[4] Plaintiff does not suggest that the Court made a manifest error of fact or law entitling it to relief.

[5] *Camp* (decided under Rule 60(b)) contained peculiar facts—which are absent here—entitling the plaintiff to relief, including:  (i) the plaintiff sought, and the court gave, assurance while the motion to dismiss was pending that plaintiff would be permitted to replead; and (ii) the court's purported "judgment" was ambiguous as to whether it terminated the case.  *Id.* at 1290.  Given the factual disparities between *Camp* and this case, Plaintiff's reliance on *Camp* is misplaced.

4360648, *8 (N.D. Ill. Sept. 23, 2008) (holding that court would read allegedly false statements in context of surrounding statements).

Furthermore, the 2007 Lehman Report sets forth the same historical information about the strength of Walgreens' generic sales during 3Q07 as does the CAC.  The Lehman Report says that "generics are very positive for its business" (*see supra* at 4), while the CAC alleges that "pharmacy margins improved with the growth in generic drug sales" in the third quarter.  (CAC ¶ 38.)  This is not, in other words, new information.  Finally, the 2007 Lehman Report says ***nothing*** about SO&A expenses or the status of reimbursements for generic prescription sales.[6]  Because the PFAC contains no new facts—much less facts meriting reconsideration of the Order—Plaintiff has not met the strictures of Rule 59(e).

Regardless, Plaintiff fails to explain why it could not, or did not, discover the 2007 Lehman Report during the ***two years*** between the announcement of Walgreens' 4Q07 results and the entry of judgment.  Plaintiff's failure to offer "any reason (never mind a *good* reason)" for not including these allegations in prior pleadings is fatal to its motion, particularly in light of lead counsel's assertion that it performed a search for analyst reports prior to filing this litigation.  *See Bressner*, 379 F.3d at 484 (emphasis in original); *Cooney v. Rossiter*, -- F.3d --, 2009 WL 3103998, *3 (7th Cir. 2009) (holding that district court did not abuse discretion in denying post-judgment motion to amend where plaintiff offered "no reason" for delay); *Doe v. Howe Military School*, 227 F.3d 981, 990 (7th Cir. 2000) (same).  Thus, even if the 2007 Lehman Report provided ***new*** facts, Plaintiff has not met the requirements for leave to amend because it has not

---

[6] In the Memorandum at page 5, Plaintiff suggests that the 2007 Lehman Report indicates the Defendants "told analysts . . . that management was happy with the outcome of the reimbursements they had negotiated for generic prescription sales."  Read as a whole, it is clear the quote is discussing Walgreens' efforts to negotiate reimbursements for "all the scripts it fills for a particular plan"—regardless of whether the script is for a generic or branded drug.  (*See supra* at 4.)

explained why it could not have offered these facts sooner. *See Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1180 (7th Cir. 1992) ("Rule 59(e) may not be used to bring a claim that should have and could have been raised earlier.").

For these reasons alone, the Court should deny the Motion.

**B.　Plaintiff's Belated Motion To Amend Is Untimely, Futile And Would Prejudice Walgreens If Granted.**

Even if the Court were inclined to apply the "liberal standard[]" suggested by Plaintiff, it still should deny the motion for reconsideration under Rule 15(a). As the United States Supreme Court recognized in *Foman v. Davis*, the Court may deny a motion to amend where Plaintiff has shown "undue delay . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment . . . ." 371 U.S. 178, 182 (1962); *see also Figgie Int'l, Inc.*, 966 F.2d at 1180 (same). Plaintiff's ***fourth attempt*** to file a valid complaint, which comes over ***18 months*** after the case was filed, should be denied because it is untimely, futile and would unduly prejudice Walgreens.

**1. The Motion Is Untimely.**

Even under Rule 15(a), "delay without explanation is sufficient reason to deny a motion to amend." *Figgie Int'l, Inc.*, 966 F.2d at 1181 (holding that delay of only 3 months after initial complaint was filed was dilatory where plaintiff failed to provide "an adequate explanation for failing to ask for leave to amend before judgment was entered"); *Zahran v. Nat'l Guardian Life Ins.*, 157 F.R.D. 443, 444 (N.D. Ill. 1994) (denying pre-judgment motion to amend where plaintiff failed to argue "some specific reason exists to justify the delay in proposing the amendment."). Here, Plaintiff offers *no* reason why it waited over 18 months after the case was filed to raise statements made in a June 2007 analyst report. The Court gave Plaintiff ample opportunity to file an amended complaint, granting two extensions of time and allowing a third

8

"corrected" complaint. In addition, both parties had a generous amount of time to file oversized briefs in connection with Walgreens' Motion to Dismiss. Plaintiff's failure to explain its delay is reason enough to deny its motion to amend.

### 2. Plaintiff's PFAC Would Be Futile.

Plaintiff's attempt to file yet another complaint should be denied because the proposed amendment would be futile. *See, e.g., Hawkins v. Groot Industs., Inc.,* Case No. 01 C 1731, 2003 WL 1720069, *13 (N.D. Ill. March 31, 2003) (Gottschall, J.) ("Although leave to amend generally should be given freely, . . . that is not the case if amendment would prove futile, i.e., when the amended complaint would not survive a motion to dismiss.") (internal citation omitted). The PFAC still attempts to bring a putative class action under federal securities laws and, therefore, still must meet the exacting pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007) (holding that the PSLRA imposes "[e]xacting pleading requirements" to prevent abusive litigation). The PSLRA requires that the Court "shall" dismiss any complaint, like the one here, which does not meet its exacting pleading requirements. 15 U.S.C. § 78u-4(3)(A).[7]

The Court dismissed Plaintiff's CAC because Plaintiff failed to plead that Walgreens had any duty to disclose allegedly omitted information regarding reimbursement rates for simvastatin and rising SO&A expenses. (Order at 3.) In doing so, the Court recognized that "Walgreens follows a 'no-guidance' policy," under which it only "provides quarterly reports on how it performed for that previous quarter and historically." (*Id.*) The Court went on to hold that accurate reporting of historic results is not actionable—"even if less favorable results might be

---

[7] Plaintiff's inexplicable reliance on *Conley v. Gibson*'s "no set of facts" pleading standard must be rejected. (Mem. at 6.) In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court replaced the *Conley* standard with a plausibility standard. 550 U.S. 544, 563 (2007). *Twombly* applies to all cases. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009).

9

predictable by the company in the future." (*Id.* (quoting *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997).)

Plaintiff's proposed amendment does nothing to cure this deficiency. As discussed above (*supra* at 6-7), the 2007 Lehman Report does not (as Plaintiff argues) suggest that Walgreens was making false or misleading statements to analysts about its current performance that it might need to supplement. It was simply reporting on past performance, which cannot "mislead by implication to future periods." (Order at 3 (citing *Searles v. Glasser*, No. 91 C 6796, 1994 WL 523712, at *7 (N.D. Ill. 1994).)

Even if the 2007 Lehman Report could be read as containing a misleading statement about current or future performance, it still does not impose a duty on Walgreens to supplement its statements about generic drug sales because the market knew the allegedly omitted information. The allegedly "adverse" information Plaintiff contends Walgreens should have disclosed (Mem. at 5) is the exact same information Plaintiff admits the entire industry knew— that the reimbursement rate for simvastatin would decline from approximately $50 to $25 per prescription beginning in January 2007. (PFAC ¶¶ 23, 24.) Furthermore, these are the very same facts Plaintiff alleged in its CAC. (CAC ¶ 57 (alleging Walgreens misled the market by failing to disclose "lower generic drug reimbursements.") And, as Walgreens argued in its Motion to Dismiss, Plaintiff cannot base a fraudulent omission claim on information already known in the market, as such "information does not . . . significantly alter[] the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *see also Silverman*, 2008 WL 4360648, at *9 ("Where the facts and circumstances allegedly omitted or represented have actually been disclosed . . . there will be no liability under securities law." (internal citation omitted)).

### 3. The Proposed Amendment Would Unduly Prejudice Walgreens.

Plaintiff has had 18 months and multiple chances to plead an adequate complaint but has not done so. Plaintiff also has had ample opportunity to brief in great detail Walgreens' Motion to Dismiss. Over the past 18 months, Walgreens has incurred significant expense by, among other things, investigating Plaintiff's allegations, putting a "litigation hold" in place, and moving to dismiss the CAC. Walgreens should not have to incur the additional time and expense of moving to dismiss an equally futile complaint merely because Plaintiff would like to add a few more allegations that, no doubt, could have been included in the CAC. *See Doe*, 227 F.3d at 990 ("[P]leading is not like playing darts; a plaintiff can't keep throwing claims at the board until she gets one that hits the mark.").

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's Motion for Reconsideration should be denied.

Dated: October 23, 2009          Respectfully Submitted,

                                 WALGREEN CO., JEFFREY A. REIN, AND
                                 GREGORY D. WASSON


                                 By      /s/ Vincent P. Schmeltz III
                                         One of their attorneys

Alan N. Salpeter, Esq.
Vincent P. Schmeltz III, Esq.
Therese King Nohos, Esq.
DEWEY & LEBOEUF LLP
180 North Stetson, Suite 3700
Two Prudential Plaza
Chicago, Illinois  60601-6710
Telephone:  312-794-8000
Facsimile:  312-794-8100

# CERTIFICATE OF SERVICE

Vincent P. Schmeltz III, an attorney, hereby certifies that on this 23d day of October, 2009, a true and correct copy of the foregoing document, **DEFENDANTS' RESPONSE OPPOSING LEAD PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 24, 2009 ORDER ENTERING JUDGMENT AGAINST PLAINTIFF**, was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                        By    /s/ Vincent P. Schmeltz III
                                                               Vincent P. Schmeltz III